*Lea v. TAL Education Group*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of November, two thousand twenty.

PRESENT:  John M. Walker, Jr.,
　　　　　　Pierre N. Leval,
　　　　　　Joseph F. Bianco,
　　　　　　　　　　*Circuit Judges.*

_____

Edward Lea, individually, and on behalf of all others similarly situated, Dios Asset Management PTE. LTD.,

　　　　　　*Plaintiffs-Appellants*,

Jack Extract,

　　　　　　*Plaintiff*,

　　　　　　v.　　　　　　　　　　　　　　　　No. 19-3549

TAL Education Group,

　　　　　　*Defendant-Appellee*,

Bangxin Zhang, Yunfeng Bai, Rong Lou,

　　　　　　*Defendants.*

_____

For Plaintiffs-Appellants:                    JASON L. KRAJCER (Kara M. Wolke, Stan Karas, Los Angeles, CA, Garth A. Spencer, New York, NY, *on the brief*), Glancy Prongay & Murray LLP.

For Defendant-Appellee:                    ROBERT A. FUMERTON (Scott D. Musoff, New York, NY, Chi Tsun Steve Kwok, Hong Kong, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP.

On appeal from the United States District Court for the Southern District of New York (Preska, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings.

Plaintiffs Edward Lea and Dios Asset Management Pte. Ltd. appeal from the September 26, 2019 judgment of the district court, dismissing their amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs, shareholders of Defendant TAL Education Group ("TAL"), brought claims on behalf of a putative class of all persons who purchased or otherwise acquired TAL's American Depositary Shares between June 1, 2016 and June 13, 2018. TAL is company that provides education-related services in China through various subsidiaries and affiliates, including its variable interest entities ("VIEs").[1]

Plaintiffs allege violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5, based on two purported frauds: (1) a sham sale and repurchase of TAL's subsidiary Guangzhou One-on-One ("GZ1-1"), a one-on-one tutoring service in the Chinese city of

---

[1] A VIE is an entity in which an investor has a controlling interest despite not having a majority of voting rights.

Guangzhou, which allowed TAL to improperly recognize $50 million in pre-tax income; and (2) TAL's use of transactions with Beijing Shunshun Bida Information Consulting Co. Ltd. ("Shunshun"), a company that provides counseling services for students seeking to attend college abroad, to improperly recognize a $25.2 million accounting profit. The district court granted the defendants' motion to dismiss the amended complaint because plaintiffs failed to adequately plead a material misrepresentation or omission, as well as the element of scienter. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

"We review a district court's dismissal of a complaint pursuant to [Rule] 12(b)(6) de novo, accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Therefore, with respect to a securities-fraud action under § l0(b) and Rule 10b-5, a plaintiff must plausibly allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013) (quotation marks and citation omitted). The only elements at issue here are whether plaintiffs plausibly stated (i) a material misrepresentation or omission by TAL, (ii) scienter, and (iii) loss causation, which we address in turn.

## I.     Material Misstatements/Omissions and Scienter

Securities fraud claims must also meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"),

3

15 U.S.C. § 78u-4(b). Under Rule 9(b), a complaint alleging securities fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns*, 493 F.3d at 99.

Moreover, to adequately plead scienter under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). To allege a strong inference of scienter, a plaintiff "must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference," unlike at trial where a plaintiff must prove scienter by a preponderance of the evidence, i.e., "that it is *more likely* than not that the defendant acted with scienter." *Tellabs, Inc.*, 551 U.S. at 328–29. In doing so, the district court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326.

As set forth below, based upon our review of the amended complaint, we conclude that it adequately alleges that the GZ1-1 and Shunshun business deals were sham transactions that lacked economic substance, and were executed with the purpose of fraudulently inflating TAL's income, thereby rendering TAL's financials and other public statements in the relevant time period materially false and misleading with regard to the true nature of these transactions.

### A.     The Alleged GZ1-1 Fraud

As an initial matter, plaintiffs set forth numerous allegations in the amended complaint surrounding the structure and sequence of the purported GZ1-1 transaction to support its claim that

4

the transaction was "entirely fictitious" and "TAL's sole purpose in the scheme was to generate a false $50 million accounting profit without causing any impact in the real world." Joint App'x at 16. In particular, the amended complaint avers that: In August 2015, TAL purportedly transferred GZ1-1 to Changing Edu in exchange for $50 million in Changing Edu redeemable preferred shares and recorded a gain of $50 million from the transfer. A little more than one year later, in November 2016, TAL re-acquired GZ1-1 in exchange for Changing Edu cancelling the $50 million in redeemable preferred shares, but Plaintiffs allege that, in reality, no transfer of GZ1-1 ever took place. Although TAL's 2017 Form 20-F indicated that Changing Edu wanted to sell GZ1-1 because it "no longer fits well with [Changing Edu]'s overall business strategy," Joint App'x at 23, TAL allegedly provided no reason why it agreed to re-acquire GZ1-1 nor why the re-acquisition was for the same price as the purported sale 15 months earlier. Moreover, the $50 million pre-tax from the purported sale had a significant effect on TAL's financials, representing 79% of TAL's net income for Q2 2016 and 48.6% of TAL's net income for FY 2016. According to plaintiffs, the deal was structured in such a way that it would be easy to reverse the transaction, as the purchase consideration was in the form of Changing Edu's preferred stock, rather than cash, all of which plaintiffs argue supports a strong inference that the transactions never in fact occurred.

The amended complaint contains additional allegations, in conjunction with the alleged unexplained and odd structure and sequence of the transaction, to support a plausible inference that TAL continued to control GZ1-1's business until the re-acquisition took place and never fully transferred the assets necessary to operate the business. For example, the amended complaint alleges, among other things, the following: (1) a senior TAL manager became the Executive Director and Legal Representative for Shujia—Changing Edu's wholly-owned subsidiary that purportedly held the GZ1-1 business—after the initial "transfer" and acquired a 10% stake in

5

Shujia for RMB 1 (about $0.15 USD), but left Shujia for TAL and sold his 10% stake for RMB1 after TAL "reacquired" GZ1-1; (2) a former Changing Edu manager revealed that TAL's contracts with GZ1-1's students, teachers, and landlords were not in fact transferred to Shujia; (3) two former GZ1-1 teachers said their salaries were paid during the relevant period by TAL or its VIE (Guangzhou Xueersi), not Changing Edu or Shujia; (4) following the August 2015 "transfer," GZ1-1 continued to post new job ads with TAL email addresses as the contact, with at least five such postings in 2016, including one as late as September 18, 2016; (5) for multiple months following the purported transfer, GZ1-1 continued to describe itself as operating under the banner of TAL in the "About Us" section on its website and continued to direct job applicants to TAL email addresses; (6) Shujia's SAIC[2] financials for 2015 and 2016 did not reflect a consolidation of the financial results of GZ1-1 before it sold the company back to TAL; (7) during TAL's Q4 2016 earnings call on April 28, 2016, TAL's Chief Financial Officer, defendant Rong Luo, said that TAL accrued a $12.5 million tax liability in China as a result of the purported sale of GZ1-1, but the financial statements TAL's subsidiaries filed with the SAIC did not record a $12.5 million tax charge; and (8) at the time of the August 2015 transaction, TAL had invested $36.3 million into Changing Edu, which represented nearly 28% of all funds Changing Edu raised over four rounds of investments, thereby giving Changing Edu incentive to participate in these sham transactions. We conclude that these factual allegations, viewed in their totality, adequately plead that the GZ1-1 business deal was a sham transaction that was designed to allow TAL to recognize a $50 million paper gain.

---

[2] The SAIC is China's regulatory agency in charge of market supervision and regulation with responsibilities roughly similar to those of the Securities and Exchange Commission in the United States.

To be sure, TAL seeks to counter any inference of fraud by pointing to legitimate, nonfraudulent business reasons that would account for the alleged conduct. For instance, TAL argues that the migration of GZ1-1's communication system took several months, which explains TAL's contact information associated with Changing Edu, Appellee's Br. 22; that leaving out financial information from regulatory filings is not by itself indicative of control, Appellee's Br. 28; that "[c]orporate reorganizations can take time and are not seamless" and "[c]hanges can fail to occur through simple oversight," Appellee's Br. 19, 23; and that any financial discrepancies "may be attributable to a host of other innocuous factors, such as differences in Chinese and U.S. accounting standards, seasonal fluctuations, or other factors affecting revenue," Appellee's Br. 31.[3]

Although the district court agreed with TAL and concluded that each of plaintiffs' allegations of continuing control by TAL had "'alternative explanations so obvious that they render plaintiff's inferences unreasonable,'" Special App'x at 12 (quoting *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 430 (2d Cir. 2011)), we respectfully reach a contrary conclusion. First, the Supreme Court made clear in *Tellabs* that allegations should not be considered one by one, but rather must be "taken collectively" to determine whether they "give rise to a strong inference of scienter." 551 U.S. at 322–23. Second, scienter allegations "need not be irrefutable" or "even the most plausible of competing inferences" to survive a motion to dismiss; instead, as noted *supra*, "[a] complaint will survive . . . if a reasonable person would deem the inference of scienter cogent

---

[3] On appeal, as before the district court, TAL requests to supplement the record with some selected teacher contracts that it contends disprove that TAL continued to pay teachers, in addition to some selected contracts that would support transfer of TAL's learning center leases. We decline to consider such documents at the motion to dismiss stage. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

7

and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324 (quotation marks omitted). The cogent allegations regarding the GZ1-1 transaction in the amended complaint, taken together, are sufficient to plausibly allege falsity, as well as to provide a strong inference of scienter that meets the standard articulated in *Tellabs*, and survive a motion to dismiss.

### B. The Alleged Shunshun Fraud

We reach the same conclusion with respect to the alleged Shunshun fraud. According to the amended complaint, in June 2015, TAL invested a total of $18 million in cash and kind into Shunshun, including a transfer of TAL's subsidiary Beijing Dongfangrenli Science & Commerce Co., Ltd. ("DFRL") to Shunshun, which gave TAL a 30% interest in Shunshun. In conjunction with this investment, the three founders of Shunshun agreed to install longtime TAL associate Yang Zhang as CEO with a 49% interest, while significantly decreasing their own interest in the company to 7%. One year later, in June 2016, TAL purchased an additional 36% of Shunshun for $32.7 million, of which $28.6 million was for purchase of Yang Zhang's shares. Thereafter, in its 2017 Form 20-F, TAL remeasured the value of the initial 30% interest in Shunshun using the Fair Value Option accounting method, thereby recognizing a $25.2 million profit from the purported increase in the value of Shunshun shares that TAL had bought in 2015.

On appeal, plaintiffs argue that the amended complaint sufficiently alleges that, although on paper TAL owned only a minority position in Shunshun following the initial 2015 investment, TAL in fact controlled Shunshun as if it were a subsidiary, and it was therefore improper under Generally Accepted Accounting Principles ("GAAP") for TAL to use a purported increase in the value of their consolidated VIEs' shares as a reason to recognize a profit. We agree that the amended complaint states a plausible claim of material misstatements or omissions in TAL's 2017

8

financial statements, with the requisite scienter, with regard to the Shunshun transactions—namely, that TAL in fact controlled Shunshun and therefore could not recognize an accounting profit on its 2015 investment as a result of a revaluation following its 2016 investment.

As with the GZ1-1 transaction, plaintiffs point to allegations in the amended complaint regarding the structure and sequence of the two Shunshun transactions that support a plausible inference of potential control by TAL. First, plaintiffs assert that the installation of Yang Zhang, an individual with a pre-existing relationship with TAL executives, in tandem with a $18 million investment by TAL, supports a reasonable inference that TAL was involved with the selection and hiring of Zhang. As a result of this initial investment, Shunshun was valued at $60 million, an amount that Zhang allegedly thought was an "extremely high valuation." Joint App'x at 39. Second, plaintiffs further contend that Yang Zhang's unexplained use of a strawman—namely, a company established by his wife two weeks before TAL's June 2016 investment and deregistered soon thereafter—in order to transfer a large majority of his Shunshun shares to TAL supports the reasonably inference that TAL coordinated with Yang Zhang to inflate the value of his shares. As a result of TAL's $36.3 million investment only one year after the first investment, Shunshun's valuation allegedly ballooned from $60 million to $103.7 million when accounting for TAL's control premium. Plaintiffs attempt to further support the inference that TAL controlled Shunshun and therefore improperly revalued its initial investment by contending that there is no evidence in TAL's 2016 financial disclosures that there was an independent purchase price determination, as opposed to purchase price allocation, and the person who benefited the most was Yang Zhang, whose shares decreased from 49% to 17.5% following TAL's acquisition.[4] Thus, plaintiffs argue

_____

[4] The amended complaint also alleges that TAL violated GAAP when it concealed that its counterparty was not a third party transacting at arm's length, but was a related party, Yang Zhang.

9

that the most plausible inference from the nature of this second transaction is that TAL and Yang Zhang used a strawman in order to conceal the identity of the seller to create the false impression of an arm's-length transaction.

Against this structural backdrop, the amended complaint alleges additional facts to support a legally sufficient inference of control by TAL. In July 2015, for example, Yang Zhang made statements to the outlet *Study Abroad* regarding Shunshun's cooperation with TAL that support an inference of control:

> So this is very fast, including some deep integration that we have discussed very closely this week with TAL, and the overall resources of TAL will be open to us. So they are also very cooperative. Moreover, I am very grateful that because TAL's top management accord us the recognition and status enjoyed by TAL's own business units, which has the highest status, so we are deeply integrated together. But TAL is very respectful of our independence, which is to say that [TAL] still let me run the business. Moreover, we have begun an extremely deep strategic alliance with them.

Joint App'x at 384 (alteration in original). Moreover, in TAL job advertisements following the first investment TAL reported that Shunshun operated "under the flag of TAL Group," which, as alleged, is a common phrase in Chinese indicating that TAL controls Shunshun. Further, in September 2015, TAL allegedly instructed Shunshun's senior management to attend a training session over 650 miles away and provided sensitive resources to Shunshun, including its client list covering over 300,000 students and a sublist of overseas clients. Finally, there are allegations that, following the initial investment, TAL employees maintained authorization to submit documents to the SAIC on DFRL's behalf, despite the transfer's completion in 2015.

TAL nevertheless argues that plaintiffs fail to sufficiently allege that the Shunshun transactions were fraudulent. TAL, for example, asserts that there is no allegation that Yang Zhang maintained substantive contact with TAL executives between meeting at Harvard Business School and eventually taking over as Shunshun's CEO; that Shunshun's other investor IDG Capital

10

announced the hiring, Appellee's Br. 35; that all executives are given incentives to maximize the value of their shares, Appellee's Br. 35–36; that there are no allegations that the independent appraiser's task was limited to purchase price allocation, rather than determining the purchase price, Appellee's Br. 38; and that TAL's provision of resources is consistent with "'two distinct and independent entities working together for mutual benefit,'" Appellee's Br. at 45 (quoting Special App'x at 18). Moreover, TAL notes that, in the same July 2015 interview referencing the "deep integration" between TAL and Shunshun, Yang Zhang also stated that "I think [TAL] fully respect[s] our independence, so that we have complete operational control." Joint App'x at 384.

Notwithstanding TAL's arguments regarding the absence of certain allegations in the amended complaint, as well as its proffered explanations for the structure of the transaction and actions that followed, we conclude that the allegations, taken as true, sufficiently plead material misrepresentations or omissions regarding the Shunshun transactions. Moreover, on the element of scienter, we similarly conclude that, "[w]hen the allegations are accepted as true and taken collectively, [a reasonable person would] deem the inference of scienter at least as strong as any opposing inference." *Tellabs, Inc.*, 551 U.S. at 326. In addition, the amended complaint pleads sufficient facts to support the reasonable inference of knowledge by the senior executives. We have emphasized that, when the magnitude of the fraud is "dramatic," it is possible "to raise the required inference with regard to a corporate defendant without doing so with regard to a specific individual defendant." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195–96 (2d Cir. 2008) (discussing a hypothetical announcement by General Motors "that it had sold one million SUVs in 2006, and the actual number was zero" (citation omitted)). Such is the situation here. For example, it is alleged that defendant Bangxin Zhang was one of TAL's founders and its Chairman and CEO at all relevant times, and thus an inference could be drawn

11

that he would have knowledge of the alleged fraudulent nature of transactions of this magnitude by virtue of his position. The same is true for defendant Rong Luo, who was allegedly TAL's CFO at all relevant times and was in charge of TAL's strategic investments from February 2015 to December 2016, as well as defendant Yunfeng Bai, who was allegedly TAL's Senior Vice President from April 2011 to September 2016 and TAL's President from October 2016 onward.[5] In any event, that inference is further supported here by allegations in the amended complaint regarding the direct participation by individual defendants Zhang and Luo in various aspects of the design and implementation of the transactions at issue.

*   *   *

In short, we conclude that the amended complaint adequately alleges that the GZ1-1 and Shunshun transactions were sham transactions that were designed to, and did, fraudulently inflate TAL's income and resulted in materially false and misleading statements in TAL's financials and public statements regarding the true nature of these transactions.

## II.  Loss Causation

Finally, TAL argues that plaintiffs failed to sufficiently plead loss causation. We disagree. To plead loss causation under Section 10(b), "the plaintiff's complaint must plead that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *ATSI Commc'ns*, 493 F.3d at 107. Information previously in the public domain cannot qualify as

---

[5] For these same reasons, the amended complaint also states a claim under § 20(a) of the Securities Exchange Act. To make out a *prima facie* case under § 20(a), a plaintiff "must show a primary violation [here, the alleged § 10(b) and Rule 10b-5 violations] by the controlled person [here, TAL] and control of the primary violator by the targeted defendant [here, the individual defendants], and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (internal citations, alterations, and quotation marks omitted). Based on the factual allegations discussed above, a § 20(a) claim also has been sufficiently pled.

a "corrective disclosure." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). The amended complaint alleges that, on June 13, 2018, analyst firm Muddy Waters Capital published a report that revealed the fraudulent nature of the GZ1-1 and Shunshun transactions and, upon such news, TAL's share price fell approximately 10% on unusually heavy trading volume. Joint App'x at 62.

On appeal, TAL argues that the amended complaint pointed to no previously concealed facts subsequently disclosed to the market that could have caused the stock drop, but instead, relied exclusively on the Muddy Waters Report, which expressly states that "all information contained herein . . . has been obtained from public sources." Appellee's Br. at 50–51 (citing Joint App'x at 77). However, as plaintiffs correctly note, much of the information in the report, including numerous interviews of former employees of TAL, Changing Edu, and Shunshun, was not public information, and much of the information, including SAIC filings of multiple entities in a different language and Chinese court judgments, was not readily accessible to investors. *See United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199 (2d Cir. 1993) ("buried" information is insufficient to constitute adequate disclosure); *see also In re China Mobile Games & Entm't Grp., Ltd Sec. Litig.*, 14-cv-4471, 2016 WL 922711, at *9 n.12 (S.D.N.Y. Mar. 7, 2016) ("The [short seller] report contains information that was not readily accessible, including [information from] . . . financial filings in Chinese."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F. Supp. 2d 311, 325 (S.D.N.Y. 2009) ("This Court cannot rule that the scattered disclosures in various amendments, annexes and exhibits to the Prospectus and Registration Statement were sufficient as a matter of law to disclose the material facts to reasonable investors."). In short, the stock value loss following the disclosure of such information in the Muddy Waters report is sufficient at this stage to plead loss causation as to each of the claims.

13

**III.    Conclusion**

We have considered all of TAL's remaining arguments and conclude they are without merit.[6]    Accordingly, the judgment of the district court is **REVERSED** and the case is **REMANDED** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Because we conclude that plaintiffs properly stated claims under § 10(b) and § 20(a), we need not address whether the district court erred by dismissing the amended complaint without granting leave to further amend.